GEORGE F. STURTEVANT *et al.*

*v.*

CHURCH STURTEVANT.

*Filed at Ottawa March 27, 1886.*

1. UNDUE INFLUENCE—*in procuring the making of a deed—what so regarded.* To avoid a deed on the ground of undue influence, the influence used must be such as the law deems wrongful, or a species of fraud. The proper and legitimate exercise of an influence fairly and honestly acquired is not the exercise of an undue influence, and a deed which, but for such influence, would not have been made, will be sustained, if made freely, and as the result of the grantor's own conviction and deliberate judgment.

2. CONSIDERATION—*for conveyance of land.* A written agreement of a grantee of land to take care of the grantor for the remainder of his life, if fairly and understandingly made and accepted by both parties, is a sufficient consideration to support the deed.

3. DELIVERY OF DEED—*what will amount to a delivery.* Two parties went to an attorney, stating their agreement, and procured him to put the same in writing, which he did in the form of two deeds from the one to the other, and the agreement of the latter to support and take care of the former, which was read over and seemed to be satisfactory, and the deeds were left with the attorney to procure the acknowledgment of the conservator of the grantor's wife, which was done, and they were then delivered to the grantee. The grantor suffered the grantee to take possession and expend large sums in valuable improvements on the premises. It was *held,* that these facts showed a delivery of the deeds.

4. CHANCERY—*remedy at law—as, in setting aside a deed which has never been delivered.* Unless a deed for land has been delivered no title passes, and the maker of the same has an adequate remedy at law to obtain possession from the party named as a grantee, and there is no necessity of going into a court of equity to have the deed set aside.

5. RESCISSION—*for non-performance of contract.* Where a person of advanced years makes a conveyance of his lands in consideration of the written obligation of the grantee to take care of and support him during his life, a breach of such agreement and failure to perform the same will justify the setting aside of the conveyance, and restoring the grantor to the full and absolute possession and control of the lands.

APPEAL from the Circuit Court of Stark county; the Hon. JOHN BURNS, Judge, presiding.

This was a bill in chancery, filed by appellee, against appellants, to set aside two deeds executed by appellee to appellant George F. Sturtevant. The original bill alleges that on April 9, 1844, complainant acquired title to the north-east quarter of section 18, township 14 north, range 7 east, in Stark county, Illinois; that from that time until the 13th day of May, 1881, he was the sole owner, and occupied said premises as a homestead, and that said premises were worth $16,000; that on said 13th day of May, 1881, he was also the owner of the north half of the south-west quarter of section 9, and a part of the south half of said quarter in township 14 north, range 7 east, in all containing about eighty-three acres, used by complainant as pasture land, of the value of about $5000; appellee further says he is nearly eighty years of age, and has been in feeble health for several years; that his wife, Hannah Sturtevant, has been insane for more than twenty years, and has lived with and been cared for by a married daughter, at her home, at the cost of appellee; that appellee's sons and daughters many years ago established homes of their own, and for more than twenty years appellee has lived solitary and alone, so far as his relatives were concerned, employing a house-keeper and farm laborer to do his work. About May 1, 1881, appellant George F. Sturtevant, of Somerville, Massachusetts, a distant relative, proposed to appellee to bring his family upon said farm, and that he would support and maintain appellee, and do his business, and relieve him from care in his declining years, and used

many undue arts and fraudulent devices to win the confidence
of appellee; and upon May 13, 1881, appellee being in feeble
health and intellect, and harassed by family and business
cares, said George F. Sturtevant, by flattering and deceitful
promises, and by an exercise of undue arts and cunning and
fraudulent devices, and by falsehood and misrepresentation,
induced appellee, and appellee did then make, execute and
deliver to said George F. Sturtevant two deeds,—one convey-
ing to him the said north-east quarter of section 18, town-
ship 14 north, range 7 east, and the other the pasture land
above described; in consideration of the execution of said
deeds, appellant George F. Sturtevant agreed that he, with
his family, would occupy and reside on said farm, and would
care for, board and support the appellee, nurse him in sick-
ness, and treat him as a member of his family during the
remainder of his life. Appellant was also to give appellee
the exclusive use of the north-east room in the house, stable
room and feed for two horses when wanted, the use of a car-
riage house, and all such other privileges upon and about
such premises as appellee might desire, not inconsistent with
the rights and privileges of other members of the family, and
he should have all the rights and privileges of a member of
the family. Said bill further alleges, that in addition to the
above the appellant was to pay to appellee the sum of $12
per acre for the pasture land, amounting to $996, which
appellant refuses to pay; alleges that said deeds were with-
out consideration, and were made by appellee as the result
of undue cunning and deceitful arts and fraudulent devices,
falsehood and misrepresentations, and false and fraudulent
pretences, practiced upon him by said George F. Sturtevant,
and that appellee was under improper restraint, from the
false practices of appellant; alleges that appellee was in his
dotage, his mind was feeble, and he was incapable of under-
standing the business transacted between appellant and him-
self; that about July 1, 1881, appellant moved on to said

premises with his family, and that since that time has occupied the dwelling-house and premises, and used the said premises and received the profits thereof, but has failed and refused to board, clothe, care for and support appellee, or to nurse him in sickness, or to give him the exclusive occupancy of said north-east room in the house, or stable room or feed for two horses, or to permit appellee to have any rights and privileges about said premises, or to permit him to reside with and constitute a member of appellant's family; on the contrary, they treat appellee with contempt and unkindness, using violent and abusive language toward him, and making his life miserable, so that it is impossible for appellee to live with them; that appellant has made improvements on said premises, and is indebted to appellee in a large sum, for money loaned and personal property sold to him, and prays that an account be taken by the court of said improvements and debts, and of the rents and profits of the land; prays that the deeds and agreement above named be declared fraudulent and void, and clouds upon appellee's title, and annulled, and that appellant be required to pay to appellee such sums as shall appear to be due upon an accounting between them, and offers to pay appellant whatever sum may appear to be due him; prays that appellants be required to reconvey said premises to the appellee, and surrender up possession, etc.; ends with general prayer for relief.

In the deed for the north-east quarter of section 18, township 14 north, range 7 east, referred to in the bill as "Exhibit A," the appellee reserves a life estate to himself in one-half of the land, and it is averred in the bill that this reservation was made for the purpose of securing the performance of this contract for his support and maintenance, on the part of appellant.

The amended bill is substantially the same as the original, except that it enters more fully into the details of the manner in which appellant and appellee became acquainted, and

states that appellee lived solitary and alone, without relations with whom he could have recreation or social intercourse,— lonesome and homesick in his own house. It is further alleged that complainant has resided on said north-east quarter of section 18, and cultivated the same, nearly forty years; that his occupation has been that of a farmer; that his education was very limited and deficient; that he was an old man, nearly eighty years of age, and for several years past has been in feeble health; that the defendant frequently referred to the fact that the complainant had reached the age when he should be relieved from all labor and care; charged complainant's relatives with neglect of duty to him, and declared that he should consider it not only a duty, but a pleasure, to care for the complainant, transact his business, and relieve him from all labor and care in his declining years; that being a poor writer, the complainant opened negotiations with Josiah C. Sturtevant, a favorite nephew, of Center Harbor, New Hampshire, to come and take care of him, sending propositions and receiving replies by the defendant as he went to Boston and returned; and that the defendant, for the purpose of obtaining complainant's property for himself, fraudulently misrepresented said propositions and the replies of said Josiah C. Sturtevant, to break off said negotiations and prevent said Josiah C. Sturtevant from coming; that soon after the termination of said negotiations, to-wit, on the 1st day of May, A. D. 1881, the defendant, still pursuing the object of his pretended solicitude and anxiety for the complainant's welfare and comfort, proposed to take complainant's farm, and care for, support in comfort and keep him, transact his business and relieve him from all care and anxiety in his declining years; and that the defendant used and exercised upon the complainant so many artful and cunning devices, and such undue and fraudulent influences and false and deceitful promises, that the complainant, then being in feeble physical health, and weak of mind and intellect,

and being actually in his dotage, and not realizing or understanding what he was doing, was induced to and did yield to the said influences and consent to said propositions; and on the 13th day of May, 1881, the complainant still being under improper restraint and undue influence, and weak mind and intellect, and in feeble health, and not realizing or understanding the business upon which he was entering, he was induced by the continued artful and cunning devices and false and fraudulent misrepresentations of the defendant, to make and execute the said deeds and agreement; that when the complainant consented to said proposal of the defendant, and from that time to and until at the time when said deeds were made, executed and signed by the complainant, he was not of sound mind or memory; that he could not and did not comprehend, and was incapable of understanding, the import and consequence of said contracts, and was not competent to make the same; that at and during such time his mind was impaired, his memory weak and his intellect feeble; that he was not capable of giving the matter due consideration; that his judgment was faulty and unsafe; that he was incapable of understanding the scope and meaning of said contract,— in short, that he was in his dotage, his mind was clouded, his understanding was impaired, and his judgment and reasoning faculties lost and destroyed; and that during all that time the defendant used and exercised over and upon the complainant improper restraint and undue influence, and by means thereof, and by the exercise of many and various cunning and deceitful arts and devices, and by fraud and circumvention, induced the complainant to make and execute said deeds and agreement; that the defendant agreed to pay to the complainant the sum of $996 for the pasture land, and that it was understood and agreed that neither of said deeds should be delivered until said sum had been paid, but that said deeds should be held by the complainant and kept in his own possession until said sum had been paid by a note or

other evidence of the indebtedness given therefor; that said deeds were taken by the notary public for no other purpose than to obtain the signature and acknowledgment of complainant's wife, and that complainant did not authorize or request or intend that the notary should give up, deliver or surrender said deeds, or either of them, to the defendant, or file the same for record, but that the same were to be returned to the complainant, to be by him kept and held until such time that he should be ready and deem proper to deliver them; that said deeds have never been delivered by the complainant to the defendant, or to any person for or as the agent of him nor for him, nor for, in behalf, at the request, or by the authority of the complainant; that there has never been any valid or lawful delivery of said deeds, but that the same were surreptitiously and wrongfully, and without the knowledge or consent of the complainant, filed for record; that said deeds of conveyance and said agreement were not to take effect until the first day of January, 1882, and until that date the complainant was to retain and keep possession of all of said real estate and said deeds of conveyance; that complainant, by a verbal contract, leased said premises to the defendant until the 1st day of January, 1882, and that on or about the 1st day of July, 1881, the defendant took and entered into the possession of said premises under said verbal lease and as a tenant of said complainant; that the complainant has never given or surrendered to the defendant the possession of said premises, or any part thereof, under said deeds, or as a purchaser thereof; that the defendant has never had or obtained the possession of said premises, or any part thereof, under and by virtue of any title conveyed to him by said deeds, but that he holds and retains the possession thereof forcibly, and without the consent of the complainant, and without right.

The answer of appellants, George S. and Harriet Sturtevant, admits that appellee, prior to May 13, 1881, was the

owner of the premises in controversy, but denies that he was
the owner on July 1, 1881; denies that the north-east quarter
of section 18, township 14, north, range 7, east, was worth
$16,000, or that the pasture was worth $5000, but says that
the first was worth $8000 or $9000 and the latter $2000;
admits that appellee's children had all left him, and that he
was an old man living without family associations, solitary
and alone, "lonesome and homesick in his house;" states
that appellee was miserable, fretful, fault-finding, and dis-
agreeable in his habits, so that his family could not live with
him, but abandoned him and left him alone; admits that in
pursuit of his business appellant came to Stark county to
purchase horses for shipment; that he called upon appellee,
his uncle, and stopped with him, more or less, while pur-
chasing horses; that he kept a part of his horses there while
gathering them for shipment; that appellee treated him with
great kindness, and that appellant became much attached to
appellee and had great regard for him; but appellant says
that he always offered to pay, and did pay, appellee for all
board or horse-feed, to the full satisfaction of appellee, and
owes him nothing therefor; admits that appellant, in con-
versation, said to appellee that he had reached an age when
he ought not to be burdened with so much care, but denies
that he ever charged the relatives of appellee with neglecting
him; denies that prior to the execution of said deeds, on
May 13, 1881, he ever told appellee that he would consider
it his duty and pleasure to take care of appellee, and manage
his business, and relieve him from care, but says that ap-
pellee, at times, was lamenting his loneliness, and the burden
of care upon him, and his desertion by his family, when
appellant did have great sympathy for him, and a desire to
assist him so far as he could, but appellant had not then
thought of taking care of appellee or his business, further
than to assist him what he could in connection with his own
business, and not otherwise; admits that appellee desired

appellant to correspond with Josiah Sturtevant, and try to induce him to come and live with and take care of appellee, and alleges that appellant did correspond with said Josiah, and once went to his home in New Hampshire and tried to prevail on him to come and live with him and take care of appellee, and, by authority of appellee, told him that if he would come and live with and care for appellee, appellee would give him all of the land in controversy, but Josiah refused to come, and told appellant that he knew appellee, and that nobody could live with him. Appellant denies that he misrepresented appellee's proposition to Josiah, or Josiah's reply to appellee, but says that he acted in good faith, and desired that Josiah should come, because of the sympathy and respect that he had for appellee; admits the execution of the two deeds and the agreement, but denies all fraud and misrepresentation, and all deceitful devices and undue influence, and denies that appellee was under any improper restraint, and denies that appellee was of weak mind or feeble intellect, or that he did not understand the business that he was transacting, but alleges that appellee was of sound mind and understanding; that he executed said deeds and agreement with full knowledge of their contents, without solicitation or influence of any kind by the appellant; that appellee then had, and now has, other important business than that, which he prudently transacts; denies that appellant was to pay any sum of money for the pasture, but says that the only consideration for the agreement was that he was to care for appellee, as stated in said agreement; alleges that in 1877, 1878, 1879 and 1880, appellant George S. Sturtevant lived at Somerville, Massachusetts; that, in partnership with two brothers, he was engaged in buying and selling groceries and provisions, and buying, shipping and selling live stock; that said firm was doing an extensive and profitable business; that in prosecution of said business appellant made frequent visits to Illinois to purchase horses; that he called upon

the appellee and was welcome there; that appellee was very friendly, and assisted appellant in his business, and appellant assisted appellee about his business, and by the interchange of business affairs an attachment grew up between them, and appellee confided to appellant his family troubles and his abandonment by his own children, and asked the assistance of appellant to induce Josiah Sturtevant to come and live with appellee, and appellant did so, and by authority of appellee offered Josiah the same premises afterwards conveyed to appellant for a similar purpose, but Josiah refused to come. After the refusal of Josiah to come, and at the next visit of appellant to appellee, in the spring of 1881, appellee asked appellant to make a proposition, how he (appellant) would come and live with and take care of appellee while he lived. Appellant replied that he would make a proposition, and in a few days thereafter did make a proposition in writing that he would give up his business in Somerville and move his family here, and care for appellee, if appellee would give him the farm and pasture in controversy, which was the same that appellee had offered to Josiah to come. Appellee accepted the offer, and appellee and appellant came together to the office of B. F. Thompson, a notary public, and directed him to draw the necessary papers. Afterward, Thompson drew said deeds and agreement, and went to the house of appellee, where said deeds and agreement were executed. The said deeds were delivered to appellant, who caused them to be recorded, and the agreement was delivered to appellee. Appellant denies that the deeds were to be retained by appellee until appellant should pay $12 per acre for the pasture land, and avers that the deeds were freely delivered, and there was to be no money consideration whatever for them; that immediately after said deeds were executed, appellant withdrew from his business at Somerville, and removed his family to Illinois, upon said premises, and in accordance with said agreement, and they have fully complied with all of their

agreements with appellee; that they have boarded and clothed him, have kept and furnished his rooms for him, have entertained his friends, and have endeavored to make him a comfortable and pleasant home, but they say that by the influence of false friends, and his own unhappy and discontented mind, appellee has become dissatisfied, and seeks to violate his agreement; that appellant, immediately after moving upon said premises, rebuilt the dwelling house, which had become dilapidated and leaky, expending thereon $2000, and on outbuildings, fences, etc., the further sum of $2000; denies that any lease was ever made, or that appellant took possession under any lease, and avers that appellee lived with appellant at the time said house was being built, and made no pretence or claim that appellant was not rightfully in possession; denies that appellant is indebted for any rent, but says that at the time said deeds were executed the season was considerably advanced. Appellant had yet to remove his family from Massachusetts, and had no seed, grain or tools to work with, and was not prepared to proceed at once with the work. It was thereupon agreed that appellant should pay for the help, use the seed and tools of appellee, and that each have one-half of the crop and pasturage that year. They did so farm that year, and appellee did receive one-half of the grain and much more than one-half of the pasturage; denies that appellee was of unsound mind, or in his dotage, or under restraint, but avers that appellee was of sound mind, and executed said deeds to induce appellant to come and make him a good home; denies that appellee is entitled to any relief, and prays the same advantage of this answer as if they had demurred or pleaded to said bill, and prays to be hence discharged with costs, etc.

A replication was filed to the answer, and upon the hearing the circuit court found that the deeds from appellee to appellant were obtained from appellee by undue influence exercised

over him by appellant, and, by decree, annulled and set them aside, and appellant has appealed to this court.

Mr. W. W. WRIGHT, and Mr. MILES A. FULLER, for the appellants:

What will be regarded as undue influence in respect to the making of a contract or will, is fully discussed in the following authorities: *Dickie et al.* v. *Carter,* 42 Ill. 379; *Roe* v. *Taylor,* 45 id. 491; *Rutherford* v. *Morris,* 77 id. 413; *Yoe* v. *McCord,* 74 id. 44; *Allmon* v. *Pigg,* 82 id. 150; *Stone* v. *Wilbern,* 83 id. 109; *Chandler* v. *Ferris,* 1 Harr. (Del.) 454; Redfield on Wills, 522.

Of the mental capacity to make a deed or other contract: Story's Eq. Jur. sec. 238; *Lindsey* v. *Lindsey,* 50 Ill. 79; *Willemin* v. *Dunn,* 93 id. 511; *Pickerell* v. *Morss,* 97 id. 220; *Stone* v. *Wilbern,* 83 id. 105; *Uhlich* v. *Muhlke,* 61 id. 499; *Miller* v. *Craig,* 36 id. 109; *Dickerson* v. *Evans,* 84 id. 451; *Roe* v. *Taylor,* 45 id. 485; 1 Hilliard on Vendors, 350.

Courts will not interfere to relieve persons from unfortunate contracts which they have understandingly, but unwisely, entered into. *Campbell* v. *Carter,* 14 Ill. 291; *Dickerson* v. *Evans,* 84 id. 451.

Delivery of deeds,—of the essentials, and evidence thereof: 4 Kent's Com. 445; *Bryan* v. *Wash,* 2 Gilm. 557; *Tunison* v. *Chamblin,* 88 Ill. 387; *Daub* v. *Englebach,* 109 id. 271.

Mr. J. E. McKEIGHAN, and Mr. S. B. JONES, also for the appellants:

Capacity to act rationally in the ordinary affairs of life, is sufficient to sustain a deed or will. *Meeker* v. *Meeker,* 75 Ill. 260; *Titcomb* v. *Van Kyle,* 84 id. 371. And generally, see *Yoe* v. *McCord,* 74 Ill. 33; *Willemin* v. *Dunn,* 93 id. 511; *McKinney* v. *Hensley,* 74 Mo. 326; *Crowe* v. *Peters,* 63 id. 429; *Pickerell* v. *Morss,* 97 Ill. 220; *Dennett* v. *Dennett,* 44 N. H. 531; *Mace* v. *Boyer,* 30 Pa. St. 111.

Any thing showing intention of the parties that the deed shall become operative, is considered as a delivery. *Gunnell* v. *Cockerill*, 84 Ill. 319; *Hewitt* v. *Clark*, 91 id. 605; *Tunison* v. *Chamblin*, 88 id. 378.

The undertaking of appellants to take care of the grantor, was a good consideration to uphold the deed. *Sutton* v. *Hayden*, 62 Mo. 101; *Gupton* v. *Gupton*, 47 id. 37; *Reid* v. *Porter*, 54 id. 265.

Of the influence that may be used to procure a deed or other provision in a party's favor, and what constitutes undue influence, see *Meeker* v. *Meeker*, 75 Ill. 260; *Allmon* v. *Pigg*, 82 id. 159; *Yoe* v. *McCord*, 74 id. 33; *Willemin* v. *Dunn*, 93 id. 511; *Lindley* v. *Lindley*, 50 id. 79; *McKinney* v. *Hensley*, 72 Mo. 326; *Roe* v. *Taylor*, 45 Ill. 486; *Crane* v. *Peters*, 63 Mo. 429; *Mace* v. *Boyer*, 30 Pa. St. 111.

Mr. JOHN E. DECKER, and Mr. C. C. WILSON, for the appellee:

As to what is undue influence, and its effect on contracts procured thereby, see 1 Redfield on Wills, (2d ed.) 514, sec. 12; id. 520, secs. 21, 27; 1 Jarman on Wills, (5th ed.) *36; 1 Story's Eq. Jur. secs. 188-244, 325; *Griffith* v. *Diefendorffer*, 50 Md. 466; 1 Greenleaf on Evidence, sec. 688.

As to mental capacity to make deeds or a will, see 2 Greenleaf on Evidence, sec. 688, note 1; 1 Redfield on Wills, 57, note 2, p. 118, sec. 15.

A deed procured by undue influence will be set aside when relations of confidence subsist between the parties. Express proof of such influence need not be made, but will be implied from the known relations of the parties. *Bayliss* v. *Williams*, 6 Coldw. 440; *Turner* v. *Turner*, 44 Mo. 535; *Greer* v. *Greer*, 9 Gratt. 330; *Millican* v. *Millican*, 24 Tex. 426; *Fuller* v. *Fuller*, 40 Ala. 301; *Corbitt* v. *Smith*, 7 Iowa, 60.

A conveyance may be impeached for mere weakness of intellect, if coupled with other things showing an advantage

taken of it. *Blatchford* v. *Christian*, 1 Knapp, 73; *Young* v. *Stevens*, 48 N. H. 133; *Davis* v. *McNally*, 5 Sneed, 583.

As to what facts and circumstances will justify the setting aside of deeds, see *Dally* v. *Smith*, 1 Coldw. 290; *Harris* v. *Weamsby*, 41 Iowa, 671; *Gibson* v. *Fifer*, 21 Tex. 260; Kerr on Fraud, 386, 151; *Kennedy* v. *Kennedy*, 2 Ala. 571; *Whitehouse* v. *Hines*, 1 Munf. 557; *Futrill* v. *Futrill*, 6 Jones' Eq. 337.

Although inadequacy of consideration does not of itself constitute fraud, yet when it is accompanied with other circumstances showing imposition or undue influence, or when it is so gross as to shock the conscience, equity will grant relief. *Gwynne* v. *Heaton*, 1 Bro. C. C. 8; *Osgood* v. *Franklin*, 2 Johns. Ch. 1; *Barnett* v. *Spatt*, 4 Ired. Eq. 171.

Delivery is essential to the validity of a deed. *Skinner* v. *Baker*, 79 Ill. 499; *Byars* v. *Spencer*, 101 id. 433; *Blake* v. *Farb*, 44 id. 302.

The controlling element in determining the delivery of a deed, is the intention of the grantor at the time. *Masterson* v. *Cheek*, 23 Ill. 76; *Walker* v. *Walker*, 42 id. 311; *Thompson* v. *Candor*, 60 id. 247.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

There are five distinct causes alleged by appellee why the deeds from him to appellant should be set aside: First, that undue influence was exercised over appellee by appellant, to induce him to execute them; second, that appellee was, at the time of executing the same, of such unsound mind and memory as not to be competent to make a deed; third, that there was no consideration for said deeds, and that their execution was procured by deceitful arts, fraudulent devices, falsehood and misrepresentation, and false and fraudulent pretences practiced on the appellee by the appellant; fourth, that the deeds were never delivered; and fifth, that appellant

23—116 ILL.

has failed and refused to perform the contract, which was the sole consideration for said deeds on his part. The circuit court based its decree upon the charge of undue influence alone, and we will therefore examine that point first, and if it appears the finding of the circuit court in that respect is sustained by the law and the evidence, of course the decree will have to be affirmed; but if the finding is not sustained, then the other reasons urged for setting aside the deeds will require examination.

It is important at the outset to ascertain what constitutes such undue influence as will vitiate a deed procured by its exercise over the grantor. It is not sufficient to avoid a will or a deed that its execution was procured by honest argument or persuasion, untainted with fraud. In *Dickie* v. *Carter*, 42 Ill. 379, this court said: "If all is fair, and the result of honest argument and persuasion, or of such influence as one may properly obtain over another, the will (deed) must stand." In *Yoe* v. *McCord*, 74 Ill. 44, we said: "To avoid a will the influence which is exercised must be undue, and this, in a legal sense, is something wrongful,—a species of fraud." The same doctrine is announced in many other cases. It follows that the proper and legitimate exercise of an influence fairly and honestly acquired, is not the exercise of an undue influence, and that a deed which, but for such influence, would not have been made, will still be sustained if made freely and as a result of the maker's own conviction, and in the exercise of his own deliberate judgment. This being the law, does the evidence in this case show that the deeds in controversy were procured by the exercise of undue influence by appellant over appellee?

We find plenty of evidence in the record showing very kind feelings between appellant and appellee prior to the execution of the deeds and for a considerable time after, from which it might be inferred that each would have some influence over the other; but we are unable to see anything in the record

which tends to show the exercise of any undue influence by appellant over appellee, unless it can be said that the deeds themselves, the evidence as to the value of the land, and the contract between the parties, raise a presumption that such an undue influence was exercised. The only thing the appellee says in his testimony which can have any relation to the question of influence is: "Defendant proposed to come and live with me in the spring of 1881. His manner towards me was very agreeable. He was kind and considerate, and treated me as a son should his father. In April, 1881, we had a talk about his coming to live with me. I told him I would deed him one-half of my farm, and the balance at my decease. I think we had another talk about it about the time we came to get Thompson to draw the writings. I did deed him two pieces of land, but I do not know whether it was put in one deed or not." The appellant says that appellee first mentioned the subject of appellant going to live with him and take care of him, and appellee says appellant first mentioned it; but it is a matter of no consequence, in this connection, which is correct in this respect, because appellee, in his testimony, does not mention a single act done or word said by appellant, by way of persuasion, importunity or otherwise, to in any manner influence him in the premises. He says they had a talk upon the subject in April, 1881, and another one before the papers were signed, but he does not pretend to give any of these conversations. Surely, if anything was done or said on either occasion which amounted to an attempt to unduly influence appellee, he would have mentioned it in his testimony, but he did not; and in view of the fact that some time elapsed after the negotiations began, before it was consummated, and that, when consummated, it was only carrying out, in substance at least, a design previously formed by appellee with reference to another nephew, and the further fact that appellee stated to the attorney who drew the papers what the contents were, we are forced to

conclude the transaction was the result of the appellee's own will and judgment, so far as the question of undue influence was concerned, and therefore the finding of the circuit court on that subject is not sustained by the evidence.

The second cause urged for setting aside the deed is, that appellee, at the time of its execution, was not of sound mind, and did not understand its purport and effect. On this subject there were nine witnesses—neighbors and friends of the appellee—examined on his behalf, six of whom say that for a few years prior to 1881 they had noticed that appellee was failing physically and mentally, and that he was not as competent to do business as he formerly had been. Five of them had done business with him, four had not. One thought that his mental faculties were unimpaired, and two of them thought his mind all right until they heard of his trade with appellant, and from that fact alone concluded his mind was impaired. On the other hand, ten witnesses were examined on behalf of appellant, all of whom testified that his mental faculties were not only good up to the time of the transaction now under consideration, but up to the time of the giving of their testimony. These witnesses, with one or two exceptions, are all neighbors and intimate acquaintances, and most of them had had business with him, and one of them (Thomas Hall) had a very important transaction with him in March, 1881, being the purchaser of a farm for the sum of $6000. Mr. Hall says : "We paid him $5000 down, and the balance in September. When I paid him the balance, in the fall, he seemed all right for health and strength, so far as I know. He inquired all about the interest, to see whether we were correct. * * * We paid it at complainant's house, to him. * * * No one assisted him in the transaction. My judgment is, he knows how to do business as well as any one we have done business with,—that was so in 1881, when we transacted business with him." It is an undisputed fact that appellee has transacted his own business ever since the

execution of the deeds in controversy, amongst other things selling a large amount of personal property to appellant, taking notes, collecting money, etc., and his mental capacity as to these transactions has not been doubted, either by himself or his friends, so far as we can ascertain from the record. We therefore conclude that he had sufficient mental capacity to make the deeds in dispute, and that they should not be set aside for want of such capacity.

As to the third cause, viz, that the deeds were without consideration, and were procured by fraud, deceit, falsehood, etc., it is only necessary to remark that both the pleadings and the evidence show a consideration for the deeds,—inadequate, it may be, but a consideration nevertheless, and such as is sufficient to sustain the deed unless there was fraud, misrepresentation or undue influence practiced upon or exercised over the appellee to procure their execution, or that there was want of mental capacity on his part to contract. The agreement to take care of appellee for the remainder of his life, if fairly and understandingly made and accepted by both parties, is a consideration sufficient to support the deed, to say nothing of the alleged agreement of appellant to pay $12 per acre for the pasture land, which will be discussed later.

What we have already said as to the claim that undue influence was exercised by appellant over appellee, applies with equal force to the charge of false pretences, falsehood, misrepresentation, deceitful practices, etc., because whilst all of these things are charged in general and sweeping terms in the bill, appellee does not refer to any word or act, in his testimony, showing or tending to show the truth of such charges, nor is there any other evidence in the record to sustain them.

The fourth cause assigned is, that the deeds were never delivered. If this were true, it was not necessary to ask the aid of a court of equity. The delivery of the deeds was necessary before any title passed, and if never delivered no

title passed, and appellee had an adequate and complete remedy at law. But we think that there was a delivery of the deeds. When appellee and appellant went to appellee's attorney, appellee told the attorney that he had made arrangements with appellant to take his farm and take care of him. Both parties told the attorney what they wanted, and he put it in writing, in the shape of the two deeds, and an agreement for support and sustenance. The papers were all read over to both parties, and seemed to be satisfactory,—at least no objection was made. The deeds were then taken by the attorney, for the purpose of securing the signature and acknowledgment of the conservator of appellee's wife, which was done, and then the deeds were, by said attorney, delivered to appellant, and by him placed on record. We think the acts of appellee in this matter fully justified the attorney in delivering the deeds to appellant, and the subsequent conduct of appellee in permitting appellant to expend such large sums of money in lasting and valuable improvements, raises a strong presumption that he considered the attorney authorized to deliver the deeds when he left them in his hands. Certainly this was the view he took of it when he filed his original bill herein, for he said there that he had made, executed and delivered said deeds.

The fifth and last cause urged for setting aside said deeds is, that appellant had failed to comply with his part of the contract, and had not furnished appellee proper support, etc., and had locked him out of the house, and refused to permit him to reside with the family as a member thereof, and, in short, that he had refused to perform any of the things required by the terms of the contract to be done and performed by him. This is a very serious charge, and if sustained by the proof, the deed should be at once set aside, and appellee restored to the full and absolute possession or ownership and control of the property as in his former estate. The contract in full is as follows:

"Whereas, Church Sturtevant has conveyed to said George F., by warranty deed of this date, the N. E. 18, 14 N. 7 E., and by said deed reserves to himself a life estate in and to the undivided half thereof, to be held by him in fee during his natural life: Now, therefore, it is mutually covenanted and agreed between said parties, that George F. Sturtevant shall care for, board, clothe and support, and in sickness nurse, the said Church Sturtevant during his natural life; that the said Church Sturtevant may have the exclusive use and occupancy of the north-east room of the dwelling house on said premises; stable room and hay and grain for two horses, or pasture for the same, as long as and whenever he may choose; the use of the carriage house for a carriage, and all such other privileges in and about and upon the premises as he may desire, and as may be consistent with and not an encroachment upon the rights and privileges of other members of the family; it being the desire and intention of the said parties that the said George F. Sturtevant and his family shall occupy and reside in the said dwelling house and premises, cultivate and carry on the said farm, and that the said Church Sturtevant shall reside with and constitute a member of the said family, and shall have and enjoy all of the rights and privileges of and as one member of the said family."

We have carefully considered the testimony on the part of the appellee, as shown by the record, on the subject of the refusal or neglect of the appellant to comply with the contract, and assuming it to be absolutely true, all that can be claimed as shown as a violation of the contract is, first, that the appellant, in the month of June, removed the stove from appellee's room on a promise to return it if the weather turned cold, and that when the weather did get cold he delayed returning it for two days, and returned it as soon as his attention was called to it; secondly, that appellant locked the door leading from appellee's room into the hall, so that appellee, in order to reach the dining room, had to step out on a cov-

ered porch and walk three feet to the dining room door. Appellee claims the reason assigned for this was, that he passed over the carpets with manure and filth on his feet, although two of his witnesses testify that appellant's wife was sick at that time, and one of them says that appellant gave as a reason for locking the door, that persons passing through the hall injured her health, and made her nervous, and that he requested appellee not to pass through the hall for that reason. The contract provides: "Said Church Sturtevant may have the exclusive use and occupancy of the north-east room, * * * and all other such privileges in and about and upon the premises as he may desire, and as *may be consistent* with and *not an encroachment* upon the rights and privileges of the members of the family, * * * it being the intention * * * that said Church Sturtevant * * * shall have and enjoy all the rights and privileges of a member of the said family." If appellee persisted in going through the hall in such a way as to annoy or injure the health of sick members of the family, it was not consistent with and was an encroachment upon the rights and privileges of other members of the family, and appellant had a right to prevent it by locking the door leading from appellee's room into the hall, provided, in doing so, he did not interfere with appellee's exclusive use of that room, or do any act injurious to the comfort or health of appellee.

Having said this much, it is not necessary to refer to the evidence on this subject offered by appellant, any further than to say, that when considered as a whole, the evidence decidedly preponderates in favor of not only a strict but a liberal compliance with all the terms of the contract under consideration, and therefore we think the decree of the circuit court ought to be reversed.

As to the consideration to be paid for the tract of land known as the pasture land, mentioned in the bill and evidence, we are inclined to the opinion the preponderance of

evidence supports the claim of appellee that appellant was to pay him $12 an acre for it. The appellant admits that it was spoken of, but says he refused to agree to it, but the house-keeper, Mrs. Wheeler, testified that appellant told her he was to pay $12 per acre for the pasture, and appellee and Thompson both say that was agreed to when the deeds were drawn. There is a misunderstanding on the part of either the appellant or the other three witnesses, and there is nothing by which to be guided except the number of witnesses, where all are equally credible and intelligent, and have equal means of knowing the facts about which they testify. The $12 per acre was the purchase price of this tract of land, and appellee has, we think, a clear right of recovery therefor, and may have a lien on the land so sold, for its payment, with legal interest since the same became payable. A court of equity having jurisdiction of the cause, will be authorized to go on and do complete equity between the parties.

For the errors heretofore mentioned, the decree of the circuit court is reversed, and the cause remanded to the said court for further proceedings therein not inconsistent with this opinion.

*Decree reversed.*

This cause was originally assigned to Mr. Justice DICKEY, and after his death was re-assigned by the court.