AMANDA CLINE

*v.*

MATHIAS CLINE.

*Opinion filed October 26, 1903.*

1. WAIVER—*permitting answer to stand is a waiver of the demurrer.* Permitting a general answer to a bill to stand after the overruling of a demurrer thereto is a waiver of the defendant's right to assign error on the overruling of the demurrer, unless, upon a consideration of the whole case, the complainant is not entitled to the relief sought.

2. TRUSTS—*what necessary to establish a resulting trust.* To establish a resulting trust in favor of a husband, he must prove the payment by him of the purchase price, or an aliquot part thereof, and that the deed was taken in the wife's name under circumstances from which the law will imply an intention that the legal title is held by the wife for his benefit.

3. SAME—*what does not create a constructive trust.* The fact that the title to property was taken in the wife's name because she "insisted" upon it and in order "to avoid a quarrel and to please her, and for no other reason," does not establish a constructive trust in favor of the husband, particularly where the first payment was made with money realized on securities to which she held the legal title and the balance paid from rent of the property and their joint earnings.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

Appellee, at the March term, 1901, of the DeWitt circuit court, filed his bill against appellant, his wife, for the purpose of enforcing an alleged trust to certain real estate in the city of Clinton and for the transfer of title from her to himself.

Appellee and appellant were married in 1866. At the time of their marriage appellant owned near Clinton, in DeWitt county, one hundred and twenty acres of land, while the appellee had about $1400 or $1500 in notes and money. Immediately after their marriage they built a small house upon the farm and made it their home until

1870, when the farm was exchanged for property in Clinton, which the parties occupied as a home for about thirty years and until they moved into the property now in controversy. At the time of the removal to the city the parties had practically nothing except the property for which the farm was exchanged, the farming operations having proved unsuccessful and appellee's money having been consumed in living expenses. After moving to the city appellee conducted a dray line for some two or three years; then became a section boss for a short time; then became employed as stationary engineer for the Illinois Central Railroad Company, which position he held until 1892, at an average salary of about $45 per month; since 1892 he has had no regular business, but has looked after the property which he and his wife had acquired. The appellant, Mrs. Cline, on moving to Clinton took in roomers and boarders, did public washing and sewing, and in 1882 opened a public dressmaking establishment. Her earnings, according to the evidence, were probably about equal to her husband's. The business operations of appellant and appellee were almost entirely conducted in appellant's name. Properties were purchased from time to time and mortgages taken and loans made, all in the name of appellant. Appellee now claims that appellant was given such control of their property and business operations in order that he might have peace with her. On the other hand, appellant claims that early in their married life, when the first property was purchased, the title was put in her name to save the payment of an unjust debt, and that always after that the same thing was done without question. In 1884 the property in controversy, designated the "hotel property," was purchased, consisting of about a quarter of a block of ground with a large brick residence upon it, and located near the center of the business portion of the city. The purchase price was $2300, one-third cash, the balance on time. The original building has been

added to and now constitutes the home of both parties and in which is conducted a boarding hotel, the balance of the lot being occupied by small buildings used for various purposes, the whole property being worth about $20,000. At the time this purchase was made, title was taken in appellant's name. The cash payment was made from money derived from certain securities which were also in her name. Until long after the purchase of the property in question the money of these parties was kept in common, appellee usually paying his wages to his wife, who loaned all their money out or invested it in property or improvements. Appellee claims that his wife had a high temper and was hard to get along with, and he was compelled to yield to her dictation in order to secure peace. On the other hand, appellant charges appellee with many cruelties and infidelity, and because of these their relations were made unpleasant and her dictation in property matters made essential. The bank account was mostly in the name of appellant, and appellee would sign her name to checks for expenditures that met with her approbation. Appellee at last tired of this supervision and instituted this suit for the purpose of having the title to this property transferred from appellant to himself, and asked for a receiver pending the litigation, and on final hearing, after demurrer to the bill had been overruled and appellant had answered over, the prayer of the bill was granted and appellee was given the property and rents.

The material allegations of the bill, upon which the right to relief is claimed, are: "That at the time your orator purchased the premises last above described, [being the premises in controversy,] the defendant, Amanda Cline, demanded and insisted that the conveyance thereof be made to her and the title to said premises be placed in her name, and to avoid a quarrel and to please her, and for no other reason, your orator permitted the title to said premises to be placed in her name; * * * that

it was the money he earned and saved that paid the purchase price of $2300, * * * and also paid for all the improvements afterwards made and placed thereon, costing more than $4000." He further represents that his said wife "is a woman of violent temper, ungovernable disposition, and that during the whole of their married life your orator has been compelled to defer to her wishes in most matters and upon most subjects, for the sake of securing peace in their household and avoiding unpleasant and disgusting family quarrels."

The cause was referred to the master in chancery, before whom the evidence was heard. The master having made his report favorable to complainant, defendant excepted thereto and exceptions were overruled.

The Cline family consisted of Mr. and Mrs. Cline and two daughters, the children being born while the Clines lived on the farm and before the removal to Clinton.

WILLIAM MONSON, and MILLS BROS., for appellant.

GEORGE K. INGHAM, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The appellant assigns various errors in this court, the first of which is the overruling of the demurrer to the bill of complaint. After the demurrer was overruled appellant permitted her general answer to the bill to stand, and by so doing must be held to have waived the right to assign error to the overruling of the demurrer, unless upon the whole case, pleadings and proof considered, complainant is not entitled to the relief sought. *Gordon* v. *Reynolds*, 114 Ill. 118; *Bauerle* v. *Long*, 165 id. 340.

The other errors assigned all involve the determination of the question of whether the property in controversy was purchased under such circumstances as to create a trust in favor of appellee, complainant below. The rulings of the court below were to the effect that

this question should be answered in the affirmative. This conclusion, appellant insists, is wrong. Appellant insists that there was neither a resulting nor constructive trust created in her at the time she became vested with the legal title to the premises in controversy, for the benefit of appellee. The former contention appellee admits, but insists that a constructive trust was created, and he seeks to sustain the decree upon that ground.

While the authorities make a clear distinction between a resulting and a constructive trust, yet each is a species of implied trust, and as such they are closely allied and frequently discussed by the authorities in the same connection. We are of the opinion that the case at bar does not properly fall within either of such divisions. There is no claim in the bill, or evidence submitted, of any fraud, accident or mistake connected with the transaction, except the contention of counsel for appellee that the alleged imperious temper of appellant brought appellee in undue subjection to her demands and operated as a constructive fraud on the rights of appellee. This contention we do not endorse. There is no claim of diverted funds, or that appellee (plaintiff below) was not fully aware of all that was done. Nor is it claimed that a trust was intended at the time the deed was executed. All that is charged is, that the funds of appellee paid for the property and that appellant exercised an undue influence over him in securing the title to be placed in her name. The principal charges are, that she "demanded and insisted" that the conveyance be made to her, and that "to avoid a quarrel and to please her, and for no other reason," the appellee directed the deed to be made to her.

The property was purchased of eastern parties through the agency of Messrs. Lewis & Burr, both of whom are now dead, and while the evidence is quite voluminous, most of that which is really material comes from appellant and appellee. Concerning the details

of this purchase appellant and appellee told different stories, each claiming to have furnished the purchase price, but it seems to be quite clearly established,—in fact, admitted,—that the legal title to the securities by means of which the first cash payment was made was in appellant, and the further payments were made from rents accruing from property the legal title to which was also in her, and from the earnings of both appellant and appellee. Practically during all the married life of the parties hereto the earnings of each were placed in a common fund and invested from time to time in the name of appellant, who seems to have had the principal management of their property, was possessed of good business judgment, was economical and industrious, and from the evidence we would conclude had as much or more property, at the time the parties were married, than appellee, and during their coverture earned quite as much money. Appellee, in stating the reason for putting the property in question in the name of his wife, testified as follows: "The deed of the eastern people was sent to Mr. Burr to handle, and I went up there to arrange about the payments and took my wife along with me. She said she wanted to go,—she wanted to know what was going on, —and I says, 'All right, my dear; I will take you right along.' She said on the way up there on the train, that she was the head of the family and wanted it in her name like the other, and if I ever made a mistake or a bad trade they could not break us up. I said, 'That ought to go in my name, the other is in yours, and I have all my money in that.' We chewed the rag, and the judge said, 'I want this settled.' That is pretty near all that was said. We didn't have any fight—we quarreled. It was finally settled in Judge Burr's office. The judge says, 'How do you want it written?' I said, 'My wife wants it in her name, and just give it to her.' * * * He [Judge Burr] asked me how it should go,—in my name or in her name. That was talked over right there and decided it should go in

her name.  *  *  *  She said she wanted it in her name
and I said I wanted it in mine.   I said to give it to her
then, if that would settle it; if nothing else would settle
it, it would have to go in her name, like everything else
I had.   As far as I know that was the last talk we had
with reference to putting the property in her name.   It
was settled right there with me."

Appellant testified that when they moved to Clinton
appellee had no property.  Her farm was traded for prop-
erty in town, the title to which was taken in her name
without any objection on the part of appellee, and subse-
quent conveyances were made to her, and, as she claims,
without any objection on his part or any demand on hers.
As to the purchase of the property in question in this
suit, appellant testified that nothing was said between
her and appellee as to how the title should be taken.
She had been active in the preliminary negotiations for
the purchase and had made a tender to the agent who
had the property for sale.   There was some slight con-
troversy as to whether the parties to this suit should
have the property or other parties who were also nego-
tiating for it at the same time.   According to appellant
the decision was left to a Mr. Kent, who said: "You make
the deed to Mrs. Cline; she was the first one." Mrs. Cline
testified that nothing was said, prior to this time, be-
tween herself and husband as to whom the deed should
be made.

To sustain the decree of the lower court on the the-
ory of a resulting trust in Mrs. Cline for the benefit of
appellee, it would have to appear from evidence clear,
strong, unequivocal and unmistakable, that the purchase
price for this property was paid by appellee and the
deed taken to appellant, from which the law raises an
implied intention that the legal title should be taken in
appellant for the benefit of appellee.   This rule is so
well established that it is hardly necessary to cite au-
thorities upon the subject, and, in fact, it is conceded by

appellee to be the law. In the case of *Goelz* v. *Goelz*, 157 Ill. 33, it was declared (p. 47): "The rule is well settled that where the evidence is·doubtful and not entirely clear and satisfactory, or is capable of reasonable explanation upon theories other than that of the existence of an implied or a resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing the trust. (*McGinnis* v. *Jacobs*, 147 Ill. 24; *Strong* v. *Messinger*, 148 id. 431.) The evidence in this record falls far short of establishing such a case as is demanded by this rule,"—and the case was reversed and remanded. And in the case of *Wormley* v. *Wormley*, 98 Ill. 544, we said (p. 550): "The complainant swears to one state of facts and the defendant to another and a different state of facts. If the title to land could be taken from one and transferred to another on such conflicting evidence, all security in titles to real estate would be at an end."

In order to establish a resulting trust in this case, it was incumbent on appellee to prove, by clear, strong, unequivocal and unmistakable evidence, the payment by appellee of the purchase price, or an aliquot part thereof. From appellee's own statements no such conclusion can be logically drawn from the circumstances shown, and, to say the least, the testimony appears to be as strong in favor of appellant as appellee that the money first paid on the property was derived from sources belonging exclusively to appellant.

Appellee contends, however, that this is a constructive trust; that because appellant "demanded and insisted" that the title be placed in her name, appellee, in order "to avoid a quarrel and to please her, and for no other reason," was compelled to accede to her wishes. The bill further sets out the orator's subservient condition, as follows: "He further represents that his said wife is a woman of violent temper, ungovernable disposition, and that during the whole of their married life

your orator has been compelled to defer to her wishes in most matters and upon most subjects, for the sake of securing peace in their household and avoiding unpleasant and disagreeable family quarrels." And counsel for appellee contends that there is here alleged a species of fraud on the part of appellant, which, if true, raises a constructive trust. Even if the evidence was sufficiently clear and strong,—which we do not think it is,—to substantiate the averments of appellee's bill, we would not be warranted in assenting to appellee's conclusions as to the nature of a constructive trust and the character of the relief proper to be granted in the present case. While a resulting trust was being discussed in the case of *Devine* v. *Devine,* 180 Ill. 447, we think the following remarks there made are pertinent to the case at bar (p. 448): "The cross-bill sets out * * * that the title to all said real estate was taken in the name of Elizabeth Devine, the defendant in the cross-bill, at her request and persistent persuasions. * * * The money used in the purchase of the property was derived from the earnings of both of them, but what portion was furnished by the plaintiff in error the record does not show. When the property was bought plaintiff in error had full knowledge of the transaction, and the title was taken in his wife's name, not through fraud, accident or mistake, but with the tacit or reluctant consent of the plaintiff in error." And in that case the relief sought by the alleged *cestui que trust* was denied, as we think it should be in the case at bar.

We think, in the case at bar, from the version given by appellee, the most that can be said is, as in the case just quoted, appellee "had full knowledge of the transaction, and the title was taken in his wife's name, not through fraud, accident or mistake, but with the tacit or reluctant consent of the" appellee. We certainly cannot say that none of the wife's money went into the purchase of this property, and we think the evidence

strongly tends to show that all of the first payment did come from property originally conceded to be the wife's, and admittedly, at the time of this transaction, the legal title to it was in her. From such circumstances the presumption would be quite natural that it was the intention that the beneficial, as well as legal, interest should be in her. In this State a married woman has the right to acquire real estate, either by gift or purchase. That a wife and mother should demand and insist that the title to real estate about to be purchased should be taken in her name is neither uncommon, surprising nor illegal, and in many instances it may be the proper and most discreet thing to do. The law of this State recognizes the right of a married woman to hold property, and the title of a wife to such property is as inviolate as that of her husband acquired in like manner. The law allows the husband and wife perfect freedom in the management of their property, and leaves them free to determine whether the title to such property shall be placed in one or the other, or both. They are permitted to counsel together, to advise and persuade each other, so long as no fraud or deceit is used. We can conceive of no fraud or deceit on the part of appellant, even if her actions were the same as alleged in the bill and as testified to by appellee. Her alleged conduct was certainly sufficiently open, free and above board for any one to understand. She claims her money was being invested. No one but appellee denies it, and his denial does not seem to be entirely harmonious or consistent with the facts admitted to be true. If her money was being invested she had a right to insist on whatever terms she saw fit to impose, and appellee admits that he assented to her terms, and under no coercion, except the fear of arousing her temper. "It is not sufficient to avoid a will or deed that its execution was procured by honest argument or persuasion. * * * The proper and legitimate exercise of an influence fairly and honestly acquired is not the

exercise of an undue influence, and a deed which, but for such influence, would never have been made will still be sustained if it be made freely and as a result of the maker's honest conviction and in the exercise of his own deliberate judgment." *Sturtevant* v. *Sturtevant,* 116 Ill. 340; *Wilcoxon* v. *Wilcoxon,* 165 id. 454; *Dickie* v. *Carter,* 42 id. 376.

That fraud is the gist of a constructive trust is a proposition so well established that a citation of authorities is scarcely required, and we content ourselves with a reference to the conclusion reached by Mr. Pomeroy in his admirable work on Equity Jurisprudence, sec. 1044: "An exhaustive analysis would show that all instances of constructive trusts, properly so called, may be referred to what equity denominates fraud, either actual or constructive, as essential elements and as their final source."

However censurable may have been the conduct of appellant, conceding the truthfulness of the allegations of the bill, from a moral standpoint, the acts alleged and the testimony given do not warrant the deduction that they amounted to a fraud in law. This property was purchased in 1884 and the bill in this case was filed in 1901. Thus it is seen that for a period of seventeen years the legal title to this property stood in appellant with the knowledge and consent of appellee. He consented to such arrangement at the time of the execution of the deed and during all this time he has acquiesced in what was then done, and not until the estrangement between his wife and himself has become acute does he seek to deny his wife's title. If a fraud was committed upon him he knew it at the time, and his long acquiescence raises the further presumption that he was not misled, but that the present effort is an endeavor to evade an arrangement deliberately made by him but which subsequent events cause him to desire to retract. *Goelz* v. *Goelz, supra; Sanford* v. *Finkle,* 112 Ill. 146.

The evidence in this case discloses that appellant has in her possession several thousand dollars' worth of property other than the property in controversy, which is the proceeds of the joint earnings and savings of the appellant and appellee and the increase from judicious investments, the value of which property would, in all probability, amount to as much or more than the earnings of appellee, as far as shown by the evidence. The evidence fails to show that the earnings of the appellee went into the particular property in controversy rather than in the other property not brought in controversy by this suit. As was said in *Devine* v. *Devine, supra* (p. 450): "Were this a bill for an accounting, it would be a difficult matter, viewing the testimony in any light, to say what the financial portions of the earnings or savings of the parties to the suit were. No books of account were kept between them, or by either of them, except during the first two years, when it seems Mr. and Mrs. Devine did keep books for the boarding house, the books being kept by Devine, as his wife could neither read nor write. These books are not, however, in evidence. What part of the joint or several earnings went for clothing, interest or living expenses is not shown. The parties quarreled about money matters, and plaintiff in error states that he could not get any satisfaction about the money he had been paying in; that he left the house and was gone three weeks; that he then came back and it was agreed he should pay board. While it might be conceded that the plaintiff in error did pay to the defendant in error a large portion of his earnings, yet the testimony fails to trace any particular sum or sums paid into any particular lot or lots." So in the case at bar, the evidence shows that there are several pieces of real estate owned by appellant that have been bought by her and the title taken in her name since the parties moved to Clinton, and it likewise fails to show whether the earnings of appellee went into these properties or the prop-

erty in question, or what portion of his earnings was used in the purchase of any or either of such properties.

The decree of the circuit court will be reversed and the cause remanded to that court, with directions to dismiss appellee's bill of complaint.

*Reversed and remanded, with directions.*