## JOHN H. KELLOGG

*v.*

## CHARLES J. PEDDICORD *et al.*

*Opinion filed June 17, 1899—Rehearing denied October 4, 1899.*

1. APPEALS AND ERRORS—*in considering depositions chancellor has no advantage over court of review.* The opportunities and facilities of the Supreme Court for coming to a correct conclusion as to the weight and value of depositions are not inferior to those possessed by the chancellor, where the latter did not see any of the deponents or hear them testify.

2. FIDUCIARY RELATIONS—*when suspicion attaching to transactions may be removed.* Notwithstanding the law views with distrust transactions between parties occupying a fiduciary relation, such a transaction will be held to be valid if it appears that it was entered into with full knowledge of its nature and effect and was the result of deliberate, voluntary and intelligent desire on the part of the party acting, without the exercise of any influence engendered by the existing relation.

3. STATUTE OF FRAUDS—*trust may be manifested by writing not intended for that purpose.* It is not necessary, in order that a writing shall be deemed sufficient to manifest a trust, that it shall have been framed for the express purpose of acknowledging the same, it being sufficient if the recognition is incidentally made, provided the object and nature of the trust sufficiently appear.

4. SAME—*when trust is sufficiently manifested in writing.* A deposition signed and sworn to by a grantee, and voluntarily produced and filed by him in his own behalf in a proceeding to set aside his deed, may be resorted to in all its parts, even though it is partly incompetent to be received in evidence, in order to establish a trust in the property covered by the deed which is manifested and declared by him in such deposition.

5. The court reviews the evidence in this case at length, and holds it insufficient to authorize the setting aside of the deed involved on the ground of improper influence by the grantee.

APPEAL from the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

BREWER & STRAWN, for appellant.

WIDMER & WIDMER, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The circuit court of LaSalle county entered a decree vacating and canceling a deed executed by one Edward S. Peddicord, now deceased, to the appellant, which purported to convey to the latter a farm containing one hundred and sixty acres of land in section 25, township 34, north, range 4, east, in said LaSalle county. The record of that proceeding in said court is before us on appeal. The bill was filed by the appellees, who are the children, grandchildren and legatees of the said deceased grantor, and alleged two grounds of attack upon the sufficiency of the deed, viz.: First, "that said Peddicord, the grantor, at the time of the execution of said deed was not of sound mind and memory, but was in his dotage, and his mind and memory were so impaired as to render him wholly incapable of comprehending the nature and consequence of the transaction in which he was engaged;" and second, that at the time of the execution of the deed said grantor was greatly enfeebled in body and impaired in mind, and was an inmate of a sanitarium of which the appellant was superintendent and also the physician and medical adviser of the grantor, and that the appellant took advantage of the influence so alleged to be possessed over the said grantor, and by undue influence procured the execution of the deed without any consideration therefor.

Upon the hearing appellees produced a number of witnesses in support of the allegation the said grantor was lacking in mental capacity to execute the deed, but did not seek to support the charge that the deed had been procured by the exercise of undue influence on the part of any one over the said grantor. The testimony thus produced by appellees, while it tended to show the grantor was not exempt from the ills and afflictions of a physical character which ordinarily affect men of his age, had little, if any, tendency to establish that his mental faculties were impaired, and, so far as it had such tendency, it was met and clearly overcome by that of witnesses produced

in behalf of appellant. Upon this proposition the preponderance, in point of number of witnesses and also in point of clearness, reasonableness and probability of their statements, was unmistakably with the appellant. The entire testimony showed the grantor was the owner of much valuable property, both real and personal, which he had accumulated by his own exertions; that he never relinquished the control and management of his business affairs, but directed and supervised farming operations upon eight different farms, including the buying, feeding and selling of cattle in large numbers, the storing and selling of grain in large quantities which his farms produced, and the purchase of farming implements and supplies; that he transacted business affairs with bankers and other business men, and there is nothing in the testimony to indicate he was lacking in judgment, discretion, prudence or care. His affairs did not suffer, but prospered, under his control. There is no room for the contention he was mentally incapable of disposing of his property, and so the chancellor concluded, as is evidenced by the fact the decree is based solely upon the finding the deed was the result of the exercise, upon the part of the appellant, of an undue and improper influence over the grantor. The appellees, complainants below, did not produce any proof tending, or which was intended, to support this finding of the court. If the finding can be upheld at all, the evidence upon which to do so must be gathered from testimony produced on behalf of appellant for the express purpose of disproving the charge. We have subjected this testimony to a most thorough investigation. It consisted wholly of depositions taken before a commissioner in the city of Battle Creek, in the State of Michigan. The chancellor did not see any of these witnesses or hear any of them testify. Our opportunities and facilities for coming to a correct conclusion as to the weight and value of their testimony are in no degree inferior to that of the trial judge.

The position of counsel for appellees is, that it appeared from the testimony the relation of medical adviser and patient existed between the grantor in the deed and the appellant at the time the deed was executed, and that that fact alone warranted and demanded the decree vacating the deed,—and authorities are cited as in support of the position.    The rule in our State is, that the existence of a confidential or fiduciary relation may give rise to suspicion, and if, upon consideration of all the facts and circumstances bearing upon the good faith and fairness of the transaction between the parties standing in such relation to each other, a reasonable suspicion exists that confidence was reposed and has been abused, the transaction should be set aside.    (*Uhlich* v. *Muhlke,* 61 Ill. 499; *Herr* v. *Payson,* 157 id. 244.)   Notwithstanding the relation, and that the law views with distrust transactions whereby the party having the confidence of the other obtains property, the distrust or suspicion may be shown to be unfounded, and will be removed and the transaction regarded as valid as if it be made to appear it was entered into with full knowledge of its nature and effect, and was the result of deliberate, voluntary and intelligent desire of the party acting, and was not secured by the exercise of the influence engendered as an effect of the relation.    *Uhlich* v. *Muhlke, supra.*

Excluding from consideration all statements in the deposition of the appellant relating to conversations or circumstances which occurred prior to the death of the grantor, the facts disclosed in this case are, that the appellant was the superintendent of a sanitarium at Battle Creek, Michigan, and had occupied that position for about twenty years; that the sanitarium is one of the largest of the institutions of its kind, capable of furnishing accommodation for one thousand patients, and has constantly and regularly connected with it from seven to ten attending physicians; that the appellant, as superintendent, although a physician, did not attend upon the patients

personally, nor did he treat or prescribe for the grantor;
that the appellant was also superintendent of the "Work-
ingmen's Home" and was connected with the management
of the "Missionary Settlement,"—charitable and benevo-
lent associations located in the city of Chicago; that the
grantor, then about seventy-four years of age, came to
the sanitarium for treatment on the 19th day of May, 1896,
and remained there until he died, on the 25th day of June
of the same year; that he had been a patient at the sani-
tarium in prior years, first about 1877 and later in 1884
or 1885; that the grantor was a farmer, stock grower and
dealer in stock, and had been very successful in all of
these lines; that he was possessed of personal property
in value to the amount of $10,000 above all his indebted-
ness, and was the owner of eight different farms in La-
Salle county, Illinois, which were valued in the inventory
filed by the executor of his estate at about $75,000, one
of which, valued at $13,000, is the property purported to
be conveyed by the deed sought to be canceled; that he
was a member of the Baptist church, and had been think-
ing of devoting some portion of his property to religious
or charitable purposes; that at the sanitarium he became
acquainted with the Rev. Samuel Sherin, a clergyman of
the Methodist Episcopal church, who was also a patient
receiving treatment there; that Mr. Sherin was much in-
terested in the work of the Workingmen's Home of Chi-
cago, and had frequent conversations with the grantor
with reference to that institution and to the beneficial
character of its work; that the grantor made many in-
quiries of Mr. Sherin as to the details of the operation of
the home, the methods employed to assist homeless men
and give them opportunities to secure employment, etc.,
and became favorably impressed with the home as a be-
nevolent and charitable institution and deemed it of much
service to the class it was designed to assist; that during
the week prior to the execution of the deed, the grantor,
on two or more occasions, told Mr. Roberts, his nurse,

that he desired to see the appellant, and spoke about the Workingmen's Home in Chicago and about assisting that institution in a financial way, and that he believed the institution would make good use of any means with which it might be entrusted; that he renewed his request to see the appellant and complained that the appellant had not called upon him; that on Tuesday prior to the execution of the deed on Saturday, the grantor requested his attending physician, Dr. Rand, to procure him an interview with appellant; that Dr. Rand made known the grantor's desire to the appellant, but that the latter was unable to call on that day; that the grantor renewed his request to his attending physician on the next day, and that the physician so advised the appellant, and that the appellant did not come on that day, but did call upon the grantor the next day in response to a similar request made then to his attending physician, Dr. Rand, but could not then spare as much time as the grantor desired he should, and the conversation had between them did not relate to the subject of the execution of the deed; that the appellant is of that religious faith holding the view that Saturday is the Sabbath or Lord's day, and observed it accordingly; that the grantor was aware of this, and regarding the day as one favorable to the accomplishment of his desire to have an interview with appellant, requested his nurse to wheel him in an invalid chair from his room in the principal building of the sanitarium to the residence of the appellant; that he was so taken by his nurse to the home of the appellant without the previous knowledge of appellant and there had an interview with appellant.

The only testimony disclosing the conversation which occurred between them is that of the appellant, which, on motion of the appellees, was excluded from consideration. It appeared, however, that as the result of the interview Mr. Hulbert, a member of the bar of the State of Michigan, a resident of Battle Creek, and who was the legal adviser

of the sanitarium and of the appellant, and had acted in that capacity since 1881, was summoned by appellant to attend at his home, and came while the grantor yet remained there; that appellant had for many years provided in his own residence a home for from twelve to twenty children, and that when Mr. Hulbert arrived at appellant's home these children were seated in a circle on the lawn under a tree, engaged in singing; that the grantor was seated in an invalid chair within the circle, listening to the songs of the children, and the appellant was standing near; that he (Hulbert) called the appellant, and they stepped to the other side of the house and sat down under a shade tree there and had a conversation, which the witness (Hulbert) was not allowed to give; that Mr. Hulbert returned to his office and prepared a form for a warranty deed from Mr. Peddicord, the grantor, to appellant, not containing, however, the description of the premises to be conveyed; that about sun-down of the same day he returned to the office of the appellant and there inserted the description of the premises from information received then from appellant, and that Mr. Hulbert, appellant, Dr. Rand and Mr. Hoover went to the room of Mr. Peddicord in the sanitarium; that Mr. Hulbert said to the grantor, "Dr. Kellogg tells me you wish to make a conveyance of some land in Illinois to be used for charitable and philanthropic purposes," to which Mr. Peddicord replied he did; that Mr. Hulbert said, "I will read this deed over to you and explain some features of it which are a little out of the ordinary," and then proceeded to read the deed and explain to Mr. Peddicord that the deed was made direct to appellant because it was better to have the title in Dr. Kellogg than in the Chicago institution; that Mr. Peddicord requested him to read again the clause reserving a life estate in the grantor, and that he did so, and that Mr. Peddicord then signed the deed and acknowledged it before Mr. Hulbert as notary public, and Dr. Rand, Mr. Hoover and Mr. Hulbert signed it as witnesses.

The record is barren of any testimony showing that the appellant said or did anything with the intent, or which had any tendency, to induce the execution of the deed. Nor do we find anything in the testimony tending to show it was the desire of the appellant the transaction should be kept secret from the relatives of the grantor, but, upon the contrary, it was proven that the appellee Mrs. Jane Smouse, a daughter of the grantor, arrived at the sanitarium after the execution of the deed and prior to the death of her father, and that the appellant, in her presence, requested the grantor to tell his daughter all that had been done in regard to the execution of the deed, and that the father said he had already done so, and the daughter confirmed the statement of the father. It also appeared the appellant sent two telegrams to the appellee Charles J. Peddicord, a son of the grantor, advising him that the physical condition of his father was such that he should come immediately to the sanitarium to see him. That the conveyance, though absolute on its face, was in trust for the benefit of the philanthropic purposes of the Workingmen's Home in the city of Chicago was openly and publicly stated by the appellant at the time of the execution of the deed, and again at the time of the conversation between the appellee Mrs. Jane Smouse, her father and the appellant, and is specifically and expressly avowed and declared in the answer filed by the appellant to the bill filed in the cause, and the declaration set out in the said answer is followed by a distinct and positive statement that the property is so held and that it will be so devoted and appropriated, and the trust and objects and nature are fully set out and declared in the deposition signed and sworn to by the appellant, and tendered and filed in court as evidence in his behalf and certified to the court as a part of the record of the cause.

The facts and circumstances which attended the execution of the conveyance here involved, thus fully dis-

closed by the testimony, are not questioned by contradictory proof on the part of the complainants, and are of such a character as to remove all imputations of unfairness, abuse of confidence or improper exercise of influence on the part of appellant or any other person. The chancellor erred in holding otherwise. It is true that under the Statute of Frauds all declarations of trust in real estate "shall be manifested and proved by some writing" signed by the declarant; but it is not necessary, in order that a writing shall be deemed sufficient to manifest a trust, it shall have been framed for the purpose of acknowledging the trust. It is sufficient if the recognition or admission of it is even incidentally made in writing, as in the course of a correspondence, (*Kingsbury* v. *Burnside,* 58 Ill. 310; *Moore* v. *Pickett,* 62 id. 158;) or in a receipt or a memorandum, provided the objects and nature of the trust appear with sufficient certainty from such documents. (27 Am. & Eng. Ency. of Law, 47-51.) In this instance the trust is sufficiently manifested and proved by the deposition voluntarily signed and sworn to by the appellant and produced by him in his own behalf, and caused by him to be filed in the cause as being competent, and incorporated into the record as being competent evidence in his behalf. Though not competent, in some of its parts, to be received in evidence, the deposition is, as to other statements therein made, competent testimony, and having been voluntarily made by the appellant and produced by him in his own behalf it may be resorted to in all of its parts to establish the trust therein manifested and declared. There is no reason the manifest wish of the grantor to devote the farm in question to benevolent purposes should be thwarted by the courts.

The decree appealed from must be and is reversed and the cause remanded, with directions to the chancellor to enter a decree finding the conveyance to be valid and effectual to vest the appellant with the title to the prem-

ises therein described, as trustee, and specifying the nature, objects and purposes of the trust, and decreeing he shall hold the same, as trustee, for the purposes of the trust.

*Reversed and remanded.*