## HANNAH M. BISHOP

*v.*

## JENNIE R. HILLIARD.

*Opinion filed April 18, 1907—Rehearing denied June 6, 1907.*

1. ATTORNEYS AT LAW—*an attorney called upon to testify should withdraw from case.* An attorney who is called upon to give material testimony in a case with which he is connected should withdraw from the case; but the fact that he does not do so does not affect the competency of his testimony, but only the weight to be accorded thereto.

2. UNDUE INFLUENCE—*what does not constitute a fiduciary relation.* The fact that an aged woman, after her husband's death, goes to live with a married daughter, whose husband assists the mother-in-law in her business affairs, there being nothing more than the usual and ordinary family relations between them, does not establish a fiduciary relation such as stamps a deed to the daughter from the mother as *prima facie* illegal.

3. SAME—*undue influence is not inferred from a deed from parent to child.* Mere advice, argument or persuasion, if the grantor's mind acts freely, does not constitute such undue influence as vitiates the deed, nor is undue influence to be inferred from the mere fact that the deed is to the grantor's child.

4. EVIDENCE—*when depositions are properly admitted although not accompanied by certificate.* Depositions offered in evidence before the master are properly admitted even though not accompanied by the certificates of the official character of the officer taking the same, where such certificates were obtained before the depositions were considered by the master and accompanied the depositions upon the hearing before the chancellor.

5. SAME—*when issuance of commission is waived.* A party who receives notice that depositions will be taken in the case, and who appears at the times and places designated and cross-examines witnesses without objecting that no commission has issued, waives the issuance of such commission.

6. SAME—*when certified copies of wills are properly admitted though not duly authenticated.* In a proceeding for partition and to set aside a deed for alleged undue influence, certified copies of foreign wills made by the grantor, one of which was made long before the execution of the deed and the other just before her death, are admissible for the purpose of showing that the grantor had entertained a purpose of disposing of her property similar to that ex-

pressed in the deed and as explaining the transfer, even though the wills are not authenticated as required by section 9 of the Wills act.

7. DEEDS—*when deed will not be set aside for undue influence.* The fact that a deed from a mother to one of her two daughters was beneficial to the grantee and that the money consideration paid was not the full value of the land does not justify setting aside the deed for alleged undue influence, where it appears that the husband of the other daughter was addicted to intoxicating liquors and that in consequence thereof the mother left such daughter's share of the other property in trust for her, and where it also appears that the grantor intended by the deed to partly reward the grantee for her care and kindness.

APPEAL from the Circuit Court of JoDaviess county; the Hon. R. S. FARRAND, Judge, presiding.

At the February term, 1906, of the circuit court of JoDaviess county the appellant, Hannah M. Bishop, filed her bill against the appellee, Jennie R. Hilliard, in which she alleged that on March 5, 1905, Ruth G. Strickel departed this life intestate, leaving Hannah M. Bishop and Jennie R. Hilliard, her two daughters, as her only heirs-at-law; that at the time of her death Ruth G. Strickel was seized in fee simple of certain real estate therein described, located in said county, to which she had derived title from her husband, Edward Strickel, on October 18, 1901. The bill further alleges that Hannah M. Bishop and Jennie R. Hilliard are tenants in common, each entitled to an undivided one-half of said premises, but that Jennie R. Hilliard claims title to the whole of the same in fee by virtue of a pretended deed of conveyance from Ruth G. Strickel to her, executed on October 4, 1902; that at the time of the execution of said deed the said Ruth G. Strickel was in feeble health and mentally incapable of executing the same; that she was advanced in years, infirm, and entirely unfitted, by habit or experience, to conduct or understand the nature of the transaction; that since the death of her husband she had been a member of the family of Jennie R. Hilliard, whose husband, Smith E. Hilliard, transacted

her business for her and assisted her in the care and management of her property; that she was wholly subject to their dominion and control, and the execution of said deed was obtained by the exercise of undue influence and for the purpose of fraudulently securing possession of said property to the unjust advantage and gain of Jennie R. Hilliard, and by reason of said facts said deed was void and of no force and effect. The prayer of the bill was that the deed should be set aside, held null and void, and that the premises should be partitioned according to the rights of the parties.

The defendant filed her answer, in which she denied that the deed was obtained by undue influence or that the grantor was mentally incapable of executing the same, claiming that the real estate was her sole property, and asked that the bill be dismissed.

Upon issue being joined, the cause was referred to a master to take evidence and report the same, together with his conclusions of law and fact. The master found that the complainant was entitled to the relief prayed in her bill. Objections were filed to the report, which were renewed as exceptions, and upon a hearing before the chancellor the exceptions were sustained and a decree entered dismissing the bill for want of equity. To reverse that decree an appeal has been prosecuted to this court.

M. H. CLEARY, for appellant.

HODSON & CAMPBELL, and M. J. TOBIN, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is claimed by appellant that the relation between the grantor, Mrs. Strickel, and her daughter Mrs. Hilliard, and the latter's husband, was of a fiduciary character, arising from the relation of principal and agent existing between them and from the dependent condition of the grantor upon the grantee and her family for physical support and

comfort, and as a result thereof all business transactions between the mother and the daughter were *prima facie* illegal, and in order to sustain the deed the evidence must show that the transaction was entirely free from fraud and undue influence.

The evidence shows that after the death of her husband at Stockton, JoDaviess county, on October 18, 1901, Mrs. Strickel went to Iowa to live with her daughter, where she continued to stay until her death. During this time she owned the farm in question and perhaps a small amount of other property. On August 15, 1902, she executed a will, in which, after making certain specific bequests, she gave one-half of the remainder of her property to the appellee in fee and the other half to Smith E. Hilliard as trustee for her daughter Hannah M. Bishop and her children, with full power to the trustee to manage the property and pay the net income annually to the daughter Hannah, which payment was to continue during the life of the latter's husband. The will further provided that if the daughter Hannah should die before her husband, George Bishop, then after his death the income was to be paid to their children, but in case George Bishop died before his wife, then the property was to be turned over absolutely to the daughter Hannah. The will also stated that the testatrix was aware of the fact that the son-in-law, George Bishop, had a certain habit which caused him to dissipate his property, and on account of this the paragraph above recited was put in the will in order that the daughter Hannah and her children might be insured the benefit of the property.

On October 4, 1902, the grantor made the deed in question. The only evidence as to the circumstances attending that transaction is the testimony of M. J. Tobin, an attorney residing in Vinton, Iowa, who testified that he had conversations with Mrs. Strickel at the time of the execution of both the deed and will, and in those conversations she went over the entire matter of her business affairs and told him

227—25

of her lack of confidence in her son-in-law, George Bishop, and she wanted that share of the property put in trust so that it could not be squandered. She also told him she wanted to sell the farm so she could get money to pay certain bequests contained in her husband's will and so the balance would be in the hands of the trustee at the date of her death, as she wanted all her business affairs settled, as nearly as possible. The testimony of this witness is liable to the criticism that he is also one of the attorneys in the case, and if his evidence were contradicted in any material respect by other credible testimony we should to that extent look upon it with suspicion, but there seems to be no direct testimony contradicting his evidence as to the circumstances under which the deed was executed. Upon discovering the materiality of his evidence he should have ceased to appear as an attorney, but his failure so to do can only go to the weight of his testimony. The evidence also shows that after the old lady became a member of the household of her daughter in Iowa, Smith E. Hilliard assisted her in the settlement of her husband's estate, in renting her property, collecting her rents, and perhaps negotiating the sale of the farm, though the evidence on that subject is meager and unsatisfactory.

We have examined the record carefully for evidence tending in the slightest degree to show that the son-in-law or his wife took any active part whatever in the transaction resulting in the execution of the deed, but we have failed to find any evidence which convinces us that they tried to induce her, against her will, to make the deed, and we are at a loss to perceive upon what theory a fiduciary relation between the parties can be said to exist. Nothing more than the ordinary and usual family relations seems to have existed between the parties during the time the mother resided with the daughter. A fiduciary relation which brings the parties within the rule contended for by counsel for the appellant is one growing out of the relation of administrator

and heir, guardian and ward, attorney, and client, principal and agent,—in other words, where the business of one is entrusted to another in such a way as to render the principal liable to be imposed upon by the agent. It is sometimes defined to be "that relation existing between parties where one holds the character of a trustee or a character analogous thereto, such as an agent, guardian and the like, and the person stands in such a position that he has rights and powers which he is bound to exercise for the benefit of the other person." (13 Am. & Eng. Ency. of Law,— 2d ed.—10.) Even though a fiduciary relation might exist, transactions between the parties are deemed to be valid if it is made to appear that they were entered into with full knowledge of their nature and effect, and they were the result of the deliberate, voluntary and intelligent desire of the parties, and were not consummated by the exercise of the influence engendered as the result of the relation existing between the parties. (*Kellogg* v. *Peddicord,* 181 Ill. 22.) But, as before said, in our view there is not sufficient proof in this record of such a fiduciary relation. The acts of the son-in-law were no more than might be expected of one bearing that relation to the mother of his wife, who was a member of his family.

The defendant offered in evidence before the master certain depositions, to which complainant objected upon the ground that they were not accompanied by commissions to or certificates of the official character of the officers before whom they were taken, as required by statute. We have held that where the certificate does not accompany the deposition it may be produced in court at the hearing and the official character of the notary then and there established, and that the true construction of the statute only requires that the official character of the officer taking the deposition should be established before it is read in evidence. (*Scott* v. *Bassett,* 186 Ill. 98.) Before the case was considered by the master the proper certificates were obtained

and accompanied the deposition upon the hearing before the chancellor.

It is insisted that there is nothing to identify the officer before whom the depositions were taken with the officers named in the certificates produced. There is no merit in this contention. The record shows that appellant received notices that the depositions were to be taken and appeared at the times and places designated and cross-examined the witnesses, without objecting, in either instance, that no commission had issued. The issuance of commissions was thereby waived. She does not contend that the persons indicated are not the same, but simply that there is nothing apparent to show this fact other than that the names are similar. The depositions were properly certified as required by statute, and the chancellor committed no error in considering them.

Attached to two of the depositions were certified copies of two wills executed by Ruth G. Strickel during her lifetime, one of which was, subsequently to her death, admitted to probate. It is urged on behalf of the appellant that these wills were improperly admitted in evidence because they were not the originals and were not properly certified. We have held that a copy of a foreign will, though recorded in this State, is not constructive notice of the will so as to affect title to real estate unless it has attached to it a certificate, as provided in section 9 of the Statute of Wills. (*Harrison* v. *Weatherby*, 180 Ill. 418.) But while this is the rule with reference to a foreign will affecting the title to property in this State, the wills in question were not offered in evidence for any such purpose. The bill was filed to set aside the deed to appellee upon the ground of mental incapacity of the grantor and undue influence on the part of the grantee and her family. The wills were competent evidence as tending to explain the reason for the transfer, one of them showing that twenty years prior to the date of the deed the grantor entertained a similar pur-

pose as to the disposition of her property to that expressed in the deed and the other showed a like purpose just before her death, and at the time of the execution of both wills it is not claimed nor pretended that she was of unsound mind and memory or that she was then unduly influenced. We think the evidence was entirely competent.

It is earnestly insisted that at the time the deed was executed the grantor was mentally incapable of transacting ordinary business, and therefore without the legal capacity to make a valid conveyance of her property. At the date of her death, March 5, 1905, she was about one month past eighty-seven years of age. Her husband had died October 18, 1901, and from him she derived title to the farm in question. She was the executrix under his will and settled his estate with the assistance of her son-in-law, the husband of appellee, who also aided her in the management of the farm and properties and in the transaction of other business affairs until the date of her death. Her business transactions other than the management of the farm were unimportant. The evidence shows that she was somewhat enfeebled by age but in fairly good health. There is an irreconcilable conflict in the testimony as to her mental condition. Witnesses for appellant testified that at and prior to the time of making the deed she was weak both mentally and physically, and had never transacted any business for herself but had entirely depended upon her son-in-law, and that on the date of the execution of the deed she was incapable of transacting the ordinary business affairs of life or of making a deed. On the other hand, many witnesses for appellee testified that while she was old and bodily infirm, her mind was all right and she was able to understand and transact ordinary business. The evidence, it must be conceded, cannot be reconciled, nor can it be determined with absolute certainty where the greater weight of the testimony lies. We are of the opinion, however, that it fairly preponderates in favor of the mental ability of the

grantor to make the deed. We do not think it can be fairly said, in the light of the testimony of all the witnesses, that she did not understand and comprehend the transaction at the time she executed the deed. All the evidence relating to the condition of her mind and the freedom of her action at that time is to that effect. There are few questions presented to courts for decision more difficult of determination than that of mental capacity to execute a will or make a valid deed or contract. Especially is this true when the issue depends upon the testimony of non-expert witnesses, such as neighbors and associates, who too often base their conclusions as to soundness or unsoundness of mind upon what they see and observe of physical conditions, particularly those resulting from old age. In this case the physician who attended the old lady in the later days of her life, the minister of the church which she attended, and many of her neighbors, who would seem to have had at least equal opportunities with those who expressed a contrary view, testified that in their opinion she was of sound mind and memory at the time she executed the deed.

On the question of undue influence it is undoubtedly true that the transfer of the land to her daughter was beneficial to the latter, but the evidence shows a motive on the part of the mother. The husband of appellant was addicted to the use of intoxicating liquors and had been for many years, and the old lady, being aware of that fact, manifested a disposition to put her property beyond his control, either directly or through his wife, whom she no doubt feared he would be able to influence and control. This was manifested by the will executed by her October 24, 1885, devising her real estate to the two daughters, but providing that Hannah M. should have her interest for life and upon her death to be equally divided among her heirs, and that if her husband died before the wife, then the estate was to vest absolutely in the wife, and on August 15, 1902, by another will, she created a trust as to the heirs of Mrs.

Bishop, clearly indicating a want of confidence in the husband. But an examination of the testimony clearly shows that at the time she made the deed to her daughter, the appellee, she intended to vest the title in her. During the time she resided with her daughter in Iowa, the husband, Smith E. Hilliard, as before stated, looked after her affairs and she appeared to be contented and happy in their home. There is every reason to believe she intended by the conveyance, in part at least, to reward her daughter and her family for the acts of kindness which they had shown her. The money consideration paid for the property was less than its actual value, but under the facts of the case we do not regard that circumstance as of controlling importance.

The contention on behalf of appellant that the consideration named in the deed was paid in notes of little value is not sustained by the facts. The evidence shows that the notes which were given in payment for the land were perfectly good and were properly inventoried as a part of the estate of Mrs. Strickel. The will of August 15, 1902, was duly probated and the estate inventoried thereunder, including the said notes. Of course, the daughter Hannah M. will obtain her share of the estate under the provisions of that will.

Much time and space have been consumed in the presentation of this case in an attempt to show that Smith E. Hilliard did not pay his debts and was otherwise irresponsible as a business man, but these matters are wholly immaterial. The conveyance was not to him, but to his wife.

There seems to be an entire absence of proof of undue influence exercised, either by appellee or her husband, which in law would avoid the deed. We have frequently held that the undue influence which will have the effect of setting aside a will, deed or other contract must be of such a nature as to deprive the one alleged to be influenced, of his or her free agency, and to render the act more the will of another. Mere advice, argument or persuasion, if the

grantor's mind acts freely thereunder, does not constitute undue influence, though it may lead to the making of the instrument when it would not otherwise have been made. A deed may not be avoided on the ground of undue influence where its execution was procured by honest argument or persuasion, untainted with fraud. (*Sturtevant* v. *Sturtevant*, 116 Ill. 340; *Wilcoxon* v. *Wilcoxon*, 165 id. 454; *Kimball* v. *Cuddy*, 117 id. 213; *Burt* v. *Quisenberry*, 132 id. 385; *Francis* v. *Wilkinson*, 147 id. 370; *Biggerstaff* v. *Biggerstaff*, 180 id. 407.) Undue influence is not to be inferred from a deed by a parent to his child, though it may in a deed by a child to the parent. *Oliphant* v. *Liversidge*, 142 Ill. 160.

We have reached the conclusion that the chancellor properly disposed of the case by dismissing the bill for want of equity, and that decree will accordingly be affirmed.

*Decree affirmed.*