## W. H. Blair, Administrator, Appellant, v. Walter H. Allen, Appellee.

### Gen. No. 7,420.

GIFTS—*when invalidity for incapacity and undue influence not shown.* A bill to set aside a gift from plaintiff's intestate to defendant of bonds and notes aggregating $24,000 was properly dismissed for want of equity where it appeared that defendant was a nephew of deceased by marriage; that he was a physician and had attended her for years; that an affectionate relationship existed between deceased and defendant and his family; that during her last illness she was taken into defendant's home and cared for; that on two previous occasions when sick she was nursed through her illness in his home; that several years prior to her death, when she had smallpox, defendant's wife went to her home, was quarantined there alone with deceased and cared and provided for her until she recovered; that deceased retained her mental faculties and managed her business affairs to the time of her death; that her only heirs were a husband and certain brothers and a sister and their children; that while her life with her husband was not pleasant, due

to his use of intoxicants, he received in addition to personal property a share in her real estate to the value of over $50,000; and that the gift to defendant was in accordance with her deliberate and intelligent wish.

Appeal by plaintiff from the Circuit Court of Peoria county; the Hon. C. V. MILES, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed March 27, 1925. Rehearing denied April 29, 1925. *Certiorari* denied by Supreme Court (making opinion final).

CAMERON & ANDERSON and WEIL, BARTLEY & WEIL, for appellant.

L. O. EAGLETON and DAILEY, MILLER, McCORMICK & RADLEY, for appellee.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This is a suit in equity instituted by appellant, W. H. Blair, administrator of the estate of Isabella A. A. Cline, deceased, against appellee, Walter H. Allen, in the circuit court of Peoria county, to set aside a gift and transfer made by Mrs. Cline to appellee, Dr. Allen, on the 8th day of February, 1922, of certain government bonds and promissory notes aggregating in the neighborhood of $24,000. In this opinion the appellant will be called complainant and appellee the defendant.

The bill of complaint alleges that the complainant is the administrator of the estate of Isabella A. A. Cline, deceased, and that she died February 10, 1922; that she was the owner of said notes and bonds which she delivered to defendant on February 8, 1922; that the defendant was then, and for many years prior thereto, had been her physician and confidential advisor in business matters; that she was not mentally competent to transact business intelligently at the time of this, alleged transfer and that she was under the undue influence of the defendant at the time, and

that the delivery was made by her by reason of the defendant taking advantage of the confidential relationship.

The bill prays that the alleged transaction be set aside and that the bonds and notes be ordered returned by the defendant to the complainant. To which bill the defendant answered and admitted that the complainant is the administrator of the estate of the deceased, and that she was the owner of the securities described in the bill of complaint and the defendant asserts that they were delivered to him by the deceased as a gift in consideration of the care, nursing and medical services rendered by the defendant and his family to the said Isabella A. A. Cline and the further consideration of love and affection.

The defendant admits that prior to the 12th of September, 1921, the said Isabella A. A. Cline lived in Edelstein, in Peoria county, and her husband at times lived with her.

The defendant in his answer states that the deceased was of the age of about 67 years, and she had theretofore become afflicted with cancer of the breast and had undergone certain treatments and operations without success, and the disease had progressed to such extent that on September 12, 1921, the deceased asked the defendant to take her to his home for treatment, which he did, and she remained in his home from said last date and was cared for by the defendant and nursed by the wife of the defendant and other nurses until her death.

Defendant admits that the deceased was ill and much of the time was confined to the house but she was not at all times confined to the bed. He denies that due to the assistance of physical disease and otherwise, and on account of her advanced age, the said Isabella A. A. Cline became weakened and impaired in mind as well as in body and for the period of at least a year before the time of her death she was wholly incapable of transacting business in an

intelligent manner or protecting her own interests, and was of unsound mind, but avers the fact to be that she did transact her own business affairs, made loans and collected interest, made leases and collected rents, and handled her own business in her own way until the time of her decease.

Defendant in his said answer states that the said Isabella A. A. Cline was the owner of 400 acres of land in Akron township, Peoria county; that said land was of a value, to wit, $500 an acre; that it was in a high state of cultivation; that she rented said land, transacted the business and looked after the collection of the rents.

The defendant further answering says that she had other business and other lands and interests, to wit, a farm in the State of Nebraska, and that she had other moneys and loans in addition to the notes and bonds given by her to this defendant, and that she collected the interest on the same and looked after and attended to her own business affairs up until the date of her decease and that she did it in an intelligent business-like manner.

Said defendant admits he is a regular licensed physician and surgeon under the laws of the State of Illinois, practicing his profession in the town of Alta, in said Peoria county, and at the time of the death of Mrs. Cline and for many years continuously thereto, and throughout her last illness, was and had been the attending and family physician of said Isabella A. A. Cline and denies that he was the only physician of said deceased in her said illness as is alleged in the bill of complaint.

Further answering defendant says that in 1897 the said Isabella A. A. Cline intermarried with Alfred R. Allen, who was an uncle of the defendant, and thereafter she was a friend of him and his family, and he has been in the confidence of the said Isabella A. A. Cline and at numerous times he has gone to her home and cared for and nursed her through spells of illness,

and the wife of the defendant particularly in January, 1914, nursed her through a siege of erysipelas, and again in April and May, 1918, nursed her through an illness of smallpox.

This defendant answering further says that said Isabella A. A. Cline, when she was well and when she was ill, stated to him and his family that they had been better to her than anyone else, and that she intended before her death to make gifts to him for the many kindnesses he and his family had shown her. The defendant says he never asked her for any gift or the property mentioned in the bill of complaint, and that she of her own free will and accord, while of sound mind and memory, although weak in body, executed the indorsements and delivered to this defendant, beyond her control and without conditions, said notes and bonds absolutely as his own forever, and in so doing she merely carried out the plans she had often referred to and stated her intentions of doing in consideration of the kindnesses this defendant and his family had shown her.

The defendant denies he sustained the relation of her confidential agent and business adviser and as such transacted her business for her, but alleges the facts to be that the said Isabella A. A. Cline transacted her own business, and at times she left notes with him, and instructed him to collect the interest on the same and to give credit on notes to the makers when the interest was paid, and in doing so the nature of the business transacted by the defendant was under her instruction and directions and of a clerical nature altogether, and she gave all orders and directed the defendant as to the business.

The defendant also denies that he either directly or indirectly took advantage of any relation existing between himself and the deceased or that he ever wrongfully or wilfully in violation of trust or relationship procured the said Isabella A. A. Cline to turn over to him large sums of money as in said bill of com-

plaint alleged. This defendant denies that he ever exercised any undue influence over the said Isabella A. A. Cline or directly or indirectly suggested to her that she transfer, give or deliver to him any gift or gifts or any sums of money, notes or any other valuable thing.

Answering the defendant denies that the said Isabella A. A. Cline was in an unconscious condition for a long time prior to her decease, but alleges she was conscious and attending to her own business affairs, collected her own interest, loaned her own money and made her own leases without consulting this defendant while in his home during her last illness, and the only time he aided her in making leases or other business transactions was done under her directions.

The defendant denies that Mrs. Cline was of unsound mind and memory and denies that a fiduciary relation existed between them, or that any improper influence whatever was exerted by him over her.

The cause was referred to a master, who, after hearing the evidence, reported to the court among other things that Mrs. Cline gave the property to the defendant; that at the time of the gift she was of sound mind and memory; that a fiduciary relation existed between her and Dr. Allen; that the defendant has shown that the gift was one Mrs. Cline had contemplated for a number of years; that it was just and reasonable when considered with reference to her property and her relations with her husband; that she acted independently and that the evidence fully overcame the presumption of the undue influence arising from the relation existing between the parties and that in fact there was no undue influence exercised over her. The master recommended that the bill be dismissed for want of equity.

Exceptions were filed by the complainant to the findings of the master, that at the time the gift was made Mrs. Cline was of sound mind and memory, that no

undue influence was exercised over her in regard to the making of the gift and that the bill of complaint should be dismissed.

The defendant excepted to the finding of the master that a fiduciary relation existed between Mrs. Cline and himself at the time of the gift. The court entered a decree overruling all exceptions and dismissed the bill for want of equity. From this decree the complainant prosecutes this appeal.

The evidence shows that Isabella A. A. Cline died, as alleged in said bill, on February 10, 1922, intestate, leaving no child or children or descendants thereof her surviving, that she left George E. Cline, her husband, and certain brothers and a sister and descendants of deceased's brothers and sister; that at the time of her death she was about 67 years of age; she had twice been married; that her first husband was Alfred R. Allen, an uncle of the defendant, and had died many years ago. In 1907 she married George E. Cline. At the time of her marriage to Cline she was living in her home in the City of Peoria. She continued to live at this place with Cline until some time in the year 1916. On account of his frequenting saloons and becoming intoxicated she moved to a home she purchased in the village of Edelstein, about 20 miles north of the City of Peoria. With the exception of short intervals when she was ill she lived with her husband in Edelstein, until in September, 1921, when she was removed to the residence of the defendant where she remained until her death.

The evidence further discloses that at the time of her death the said Isabella A. A. Cline in addition to the notes and securities in question left sufficient personal assets to satisfy and discharge all debts owing by her at the time of her death, together with all claims against her estate and costs of administration. George E. Cline, by reason of the death of Mrs. Cline, became and was entitled to all the personal assets and

estate owned by her at the time of her death. In addition to his interest in her personal assets and estate which became vested in him upon her death he became and now is the owner of an equal undivided one-half of all real estate owned by her in the State of Illinois at the time of her death and to a right of dower in the other one-half; and it appears that all of said real estate is free and clear of incumbrances and the interest of said George E. Cline therein is worth the sum of $50,000.

It further appears that the said Isabella A. A. Cline long prior to her death was advised as to the rights and interests which her husband would take in her estate in case she died intestate. It is shown that intimate and affectionate relations existed between the said Isabella A. A. Cline and the defendant, his wife and children for many years prior to her death and that from time to time the said Isabella A. A. Cline had expressed to numerous persons her desire and intention of benefiting the defendant and his family from her estate. Her home life was more or less unpleasant and was made so by her husband. Instead of supporting her she supported him.

On February 7, three days before the death of the deceased and one day before she delivered the notes and bonds to the defendant, the tax collector called on her for the purpose of collecting the taxes that had been extended against her property. Mrs. Cline said to the collector, she was glad he had come and had been anxiously awaiting him. She was very careful to know that all of her property was noted on the receipt, and that the receipt and check given by her to the collector corresponded.

The evidence further establishes that the personal property possessed by her from the time of her second marriage, aside from household goods and personal effects, consisted of moneys loaned in varying amounts to divers persons, or otherwise invested, so as to produce income and interest, which investments

so held by her constantly approximated, during at least the last six or eight years of her life, the sum of $35,000. That the exclusive management, direction and control of all of said property, from and after her said second marriage to the time of her death, was exercised by the said Isabella A. A. Cline, and in the course of her control and management of said estate she, from time to time, as occasion required, negotiated and arranged for all leases and tenancies of said real estate, and the investment and reinvestment of said funds, and in so doing dictated and determined the terms of all such leases and investments, and usually herself prepared and drafted the written leases, notes and other instruments in writing relating thereto; that she, in her management and control of said estate, determined what improvements should be made thereon from time to time, and contracted for the making thereof, paid all taxes levied and assessed upon said property and maintained bank accounts in one or more banks of deposit, in which bank accounts she made deposits personally and by letter, and continuously drew checks against the same, and received back paid checks therefrom, and verified and looked after the correctness of said bank accounts.

That the deceased had a high regard for the defendant and his family there is no question. Why shouldn't she have had? It is clear from the record that she had not only been taken into the family of the defendant and cared for during her last illness, but she was also on two previous occasions sick at his home and was nursed through each of them. Several years prior to her death, when she had smallpox, Mrs. Allen, wife of the defendant, went to her home and was there quarantined with her alone, and cared and provided for her until she recovered.

The record is replete with many acts of kindness shown the deceased by the defendant and his family covering a period of many years. No one can read the evidence in this case and reach any conclusion

other than that the defendant and the members of his family were greatly attached to the deceased, and the record fails to show in the least that this attachment was of a mercenary character. In view of what is disclosed as to the character of treatment Mrs. Cline received at the hands of the defendant and his family we can readily understand what she had in her mind when she stated to the witness Winchester, "The doctor had done more for me than all the rest of them and I want to do something for him."

It is the contention of appellant that undue influence was exercised by the defendant in bringing about the gift of the securities involved in this proceeding. In *Sargent v. Roberts*, 265 Ill. 210, the questions of fiduciary relation, undue influence and mental capacity were relied upon to defeat the act of the grantor. Sargent, advanced in years, lived with his tenant, Roberts, a nephew, on his farm for a period of about nine years before his death. All this time he was sick and needed attention. The last six weeks of his life he was confined to his bed and was at all times attended by Roberts and his wife. Shortly before he died his physician told him he was failing rapidly and he should put his affairs in order. He thereupon requested the doctor to bring his banker to draw his will. The doctor and banker returned and then Sargent told them he wanted all his heirs to share alike. It was his intention at that time to make a will. Apparently Roberts, who was in another room, heard this statement, for he came into the sick room and argued with Sargent that he should make a deed to him, Roberts, in consideration for the care he had bestowed upon him. It seems Roberts later went upstairs and got the tax receipt and brought it into the sick room and then retired. The deed was then drawn and executed. The grantor reserved a life estate for himself. It further appeared that Roberts was in the habit of advising the grantor with reference to his affairs, and sometimes the grantor took his advice and

sometimes he did not. The deed conveyed a large part of the grantor's estate. The court held that, admitting fiduciary relation existed, it appeared from the statements made to the doctor and banker at the time the deed was drawn, and from previous statements of the grantor as to his intention to deed his property to anyone who would take care of him, that the presumption of undue influence had been overcome. It was also doubtful in this case as to just what was the mental capacity of the grantor. Many witnesses testified on both sides of this question. The court below found against the validity of the deed; the Supreme Court reversed the finding and in its opinion at page 216 said:

"The test of mental capacity to make a deed is that one must have sufficient mind and memory to comprehend the nature and effect of the act in which he is engaged. * * * Even though the mind of the grantor may be impaired incident to old age, still if he is able to understand the nature of the business in which he is engaged and the effect of what he is doing, and exercises his own will with reference thereto, his act is not invalid. Beyond question, the evidence in this record shows that Sargent, before the execution of the deed, at that time and for some weeks thereafter was able to transact business and comprehend fully what he was doing at the time he executed the deed. Counsel for defendants in error practically concede this in their argument, but contend that his mind was so enfeebled by disease and old age that he was easily subject to the influence of those about him and was unduly influenced by Roberts to execute the deed. What constitutes undue influence will depend upon the circumstances of each case. Undue influence is a species of constructive fraud which the courts will not undertake to define by definite words or rules. * * * Influence, to render a conveyance inoperative, must be of such a nature as to deprive the grantor of his free agency.

"An undue influence means a wrongful influence; such an influence as makes the grantor or testator in

the instrument executed speak the will of another and not his own. * * * It is not sufficient to avoid a will or deed that its execution was procured by honest argument, untainted with fraud. Proper and legitimate influence, honestly acquired, is not the exercise of undue influence. A deed which but for such legitimate influence would not have been made will still be sustained if made freely and as a result of the maker's own conviction in the exercise of his own deliberate judgment. Influence secured through affection is not wrongful and a will or deed will not be held void because of partiality influenced by such affection.''

On page 218 the court further said:

''In this connection counsel for defendants in error argue that a fiduciary relation existed between Roberts and his uncle and therefore this deed was prima facie void, while counsel for plaintiffs in error argue strenuously that such a relation did not exist. Conceding, for the purpose of this case, that such relationship did exist, transactions between them will be held valid if it appears they were entered into with full knowledge of their nature and effect and resulted from the deliberate, voluntary and intelligent desire of both and not through influence engendered by their relationship. (*Bishop v. Hilliard* [227 Ill. 382.]) What we have already said with reference to the execution of this deed shows conclusively that it resulted through the voluntary desire of the grantor and not because of any undue influence exercised upon him by the grantee.''

The existence of a fiduciary relation does not avoid a conveyance unless by reason of the relation undue advantage is taken of the grantor. *Lang v. Lang,* 284 Ill. 148.

There is no rule of law which prohibits a grantor from making a gift to one who stands in a confidential relation to him provided the gift is made voluntarily and is not procured by a betrayal of the trust. *Pillsbury v. Bruns,* 301 Ill. 578.

Whatever were the relations existing between the defendant and Mrs. Cline, we are of the opinion that

the evidence clearly established that the gift was in pursuance to and in accordance with the deliberate and intelligent wish of the deceased, and that the transaction was of her own free will and accord, and not through influence engendered by their relationship.

We conclude, therefore, that the decree of the circuit court of Peoria county should be affirmed.

*Decree affirmed.*